**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| TERESA GROOMS, as an individual,    ) | 3:25-cv-02733-MGL<br>**C/A No.: ~~3:24-cv-04428-CRI~~** |
|       ) | |
|      Plaintiff,    ) | |
|       ) | |
|       v.    ) | **JURY DEMANDED** |
|       ) | |
| SPECTRUM BRANDS, INC. and    ) | |
| QVC, INC. d/b/a COOK ESSENTIALS,    ) | |
|       ) | |
|      Defendants.    ) | |

**COMPLAINT FOR DAMAGES**
**AND JURY TRIAL DEMAND**

Plaintiff TERESA GROOMS, by and through the undersigned counsel, sets forth her claims against Defendant QVC, INC. and Defendant SPECTRUM BRANDS, INC. (hereinafter collectively referred to as "Defendants") in this Complaint for Damages and Jury Trial Demand as follows:

**NATURE OF THE CASE**

1.      This is a products liability action to remedy the damages caused by latent safety defects present in a Cook's Essential 8-Quart Programmable Pressure Cooker Model CEPC800 ("PRESSURE COOKER"):



2.      Defendants design, manufacture, market, import, distribute and sell a wide range of consumer products, including the subject "Cook's Essential Programmable Pressure Cooker," which specifically includes the aforementioned pressure cooker at issue in this case.

3.      Defendant QVC owns the trademark for Cook's Essentials.

4.      On or about September 17, 2021, Plaintiff suffered burn injuries as the direct and proximate result of the PRESSURE COOKER'S lid suddenly and unexpectedly exploding off the pressure cooker's pot during the normal, directed use of the pressure cooker, allowing its scalding contents to be forcefully ejected from the pressure cooker and onto Plaintiff. The incident occurred as a result of the failure of the PRESSURE COOKER'S supposed "Self-Locking Lid,"[1] which purports to keep the consumer safe while using the cooker. In addition, the incident occurred as the result of Defendants' failure to redesign the PRESSURE COOKER, despite the existence of economical, safer alternative designs.

5.      The defective condition of the PRESSURE COOKER, known to Defendants but unknown to Plaintiff, caused permanent and debilitating injuries to Plaintiff.

6.      As a direct and proximate result of Defendants' collective conduct, Plaintiff incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PARTIES AND JURISDICTION

7.      Plaintiff TERESA GROOMS is an adult citizen of the State of South Carolina and a resident of Richland County, South Carolina.

8.      Defendant QVC, INC. is incorporated in the State of Delaware and has a principal place of business located at 1200 Wilson Drive, West Chester, PA 19380. QVC does business in

---

[1] *See* CEPC800 Owner's Manual, pg. 15. A copy of the Owner's Manual is attached hereto as "Exhibit A."

all 50 states, including South Carolina.  QVC has a registered service address 251 Little Falls Drive, Wilmington, DE 19808. At all relevant times, QVC was actively involved in the design, manufacture, marketing, import, distribution, and sale of the PRESSURE COOKER. QVC labeled the PRESSURE COOKER as its own under its own "Cook's Essential" brand, holds itself out to be the manufacturer of the product, and exercised control over the design, construction, and quality of the PRESSURE COOKER.

9.     Defendant SPECTRUM BRANDS, INC. is incorporated in the State of Delaware and has a principal place of business located at 3001 Deming Way, Middleton, WI 53562. SPECTRUM does business in all 50 states, including South Carolina. SPECTRUM has a registered service address of 251 Little Falls Drive, Wilmington, DE 19808. At all relevant times, SPECTRUM was actively involved in the design, manufacture, marketing, import, distribution, and sale of the PRESSURE COOKER. SPECTRUM exercised control over the design, construction, and quality of the PRESSURE COOKER. As a corporation doing business in South Carolina and selling products, including the SUBJECT PRESSURE COOKER, for distribution into South Carolina, jurisdiction is proper over SPECTRUM.

10.     Through their actions, Defendants have consented to the jurisdiction of this Court and could reasonably anticipate being hailed into a South Carolina court.

11.     Alternatively, this Court has personal jurisdiction over Defendants because they have sufficient minimum contacts with South Carolina and have intentionally availed themselves of the markets within South Carolina through the promotion, sale, marketing, and distribution of its products, including the SUBJECT PRESSURE COOKER, into South Carolina. The Defendants knowingly marketed, distributed, and sold the SUBJECT PRESSURE COOKER for

delivery in South Carolina, and did deliver the SOUTH CAROLINA to its first consumer purchaser in South Carolina.

12. This Court has subject-matter jurisdiction over this action because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including the sale and distribution of the SUBJECT PRESSURE COOKER and the place of the injuries suffered by Plaintiff (at Plaintiff's home in Columbia, South Carolina).

## FACTUAL ALLEGATIONS

14. Defendants are engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the PRESSURE COOKER at issue in this litigation.

15. According to the Owner's manual, which accompanies each PRESSURE COOKER sold, the PRESSURE COOKER is "quick, safe and easy to use."[2]

16. The PRESSURE COOKER'S Owner's Manual, under the section "Cooking with Your Programmable Pressure Cooker,[3]" represents the following:

> 17. Never try to force open the Self-Locking Lid. Built-in Safety Valves prevent opening the Lid while there is still pressure in the Removable Cooking Pot. All pressure and steam must first be released as explained in Steps 10 and 11.

This statement is unequivocally false and allows a consumer, such as Plaintiff, to believe that the lid cannot be removed while pressurized.

---

[2] Exhibit A at pg. 5.
[3] *Id.* at pg. 15.

17.     Plaintiff's mother purchased the PRESSURE COOKER from QVC in South Carolina.

18.     Plaintiff's mother gifted Plaintiff the PRESSURE COOKER sometime after she purchased it.

19.     On September 17, 2021, Plaintiff was using the PRESSURE COOKER designed, manufacture, marketed, imported, distributed, and sold by Defendants for its intended and reasonably foreseeable purpose of cooking a roast.

20.     Despite the failsafe devices supposedly integrated as part of the design of the PRESSURE COOKER, the PRESSURE COOKER'S lid blew off with extreme force while the cooker remained pressurized.

21.     As it exploded, the PRESSURE COOKER sprayed super-heated liquid and steam across Plaintiff TERESA GROOMS' body.

22.     Defendants labeled the PRESSURE COOKER as compliant with all applicable UL industry standards. These representations were false.

23.     The PRESSURE COOKER was not compliant with UL 136 § 9, the Covering Opening Test, given that the Safety-Lid Lock was defeated while there was enough pressure in the cooker to create a substantial risk of injury to Plaintiff.[4]

24.     The PRESSURE COOKER was also certified for compliance with UL 136 § 10 which states that safety devices should last for at least 6,000 cycles.[5]

---

[4] "An ordinary user shall not be capable of manually defeating the holding action of the clamping device when the pressure in the cooker reaches a value that creates a risk of injury to persons. The propelling of a loosened cover and the escape of steam or hot water are examples of this risk." UL 136 § 9.1.

[5] "The cover locking mechanism is to be operated through 6000 cycles. Each cycle shall completely lock and unlock the cover." UL 136 § 10.

25.     In the PRESSURE COOKER'S lifespan, it has not been used anywhere near 6,000 times.

26.     Plaintiff used the PRESSURE COOKER for its intended purpose of preparing meals and did so in a manner that was reasonable and foreseeable by Defendants.

27.     However, the PRESSURE COOKER was defectively designed and manufactured by Defendants in that it failed to properly function as to prevent the lid from removing with minimal force while the cooker remained pressurized, during the ordinary, foreseeable, and proper use of cooking food with the PRESSURE COOKER; placing Plaintiff, and similar consumers in danger while using the PRESSURE COOKER. As such, Defendants' PRESSURE COOKERS possess defects that make them unreasonably dangerous for their intended use by ordinary consumers.

28.     But for the defects present in the PRESSURE COOKER, Plaintiff TERESA GROOMS would not have suffered the injuries she incurred as a result of this incident.

29.     The defective condition of the PRESSURE COOKER was present in the PRESSURE COOKER when it left the control of Defendants.

30.     At the time of the incident, the PRESSURE COOKER was in essentially the same condition as when it left the hands of each Defendant.

31.     Upon information and belief, Defendants designed, manufactured, purchased, tested, marketed, promoted, advertised, sold, distributed, and/or approved of the PRESSURE COOKER in South Carolina.

32.     Economic, safer alternative designs were available that could have prevented the PRESSURE COOKER'S lid from opening while pressurized.

33.    Upon information and belief, Defendants were previously aware of other incidents of exploding pressure cookers due to the identical design, manufacturing, and warning defects in the PRESSURE COOKER that maimed Plaintiff TERESA GROOMS, yet Defendants failed to recall and remedy the defects in the PRESSURE COOKER or adequately warn Plaintiff of the latent danger caused by those known defects.

34.    As a direct and proximate result of the defects present in Defendants' PRESSURE COOKER, Plaintiff TERESA GROOMS used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries, including but not limited to, a second-degree burn to her abdomen.

## CAUSES OF ACTION

### COUNT ONE
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against Defendant SPECTRUM)

35.    Plaintiff incorporates as if re-alleged Paragraphs 1 through 35.

36.    Defendant SPECTRUM marketed, distributed, and sold its PRESSURE COOKER to Defendant QVC for the purpose of reselling and redistributing the PRESSURE COOKER in South Carolina.

37.    When SPECTRUM sold the PRESSURE COOKER, its sale included an implied warranty that the cooker was merchantable and fit for the ordinary purpose for which it was intended.

38.    Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the implied warranties.

39.     SPECTRUM'S PRESSURE COOKER was not merchantable and fit for its ordinary purpose, because it had the propensity to lead to serious personal injuries as described herein.

40.     Plaintiff's mother purchased the PRESSURE COOKER and Plaintiff used the PRESSURE COOKER with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

41.     SPECTRUM'S conduct, as described above, was extreme and outrageous. SPECTRUM risked the safety and well-being of consumers and users of its PRESSURE COOKERS, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. SPECTRUM made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.

42.     SPECTRUM'S breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injuries and damages.

## COUNT TWO
## BREACH OF EXPRESS WARRANTY
### (Against Defendant SPECTRUM)

43.     Plaintiff incorporates as if re-alleged Paragraphs 1 through 43.

44.     Defendant SPECTRUM marketed, distributed, and sold its PRESSURE COOKER to Defendant QVC for the purpose of reselling and redistributing the PRESSURE COOKER in South Carolina.

45.     When SPECTRUM sold the PRESSURE COOKER, its sale included an express warranty on its labeling that it complied with applicable UL standards for pressure cookers:



46.     In fact, the PRESSURE COOKER failed to comply with these standards because Plaintiff, "[a]n ordinary user," was able to "manually defeat[] the holding action of the clamping device when the pressure in the cooker reache[d] a value that creates a risk of injury to persons. The propelling of a loosened cover and the escape of steam or hot water are examples of this risk." UL 136 § 9.1.

47.     Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the express warranties.

48.     SPECTRUM'S PRESSURE COOKER breached its express warranties because it had the propensity to lead to serious personal injuries as described herein.

49.     Plaintiff's mother purchased the PRESSURE COOKER and Plaintiff used the PRESSURE COOKER with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

50.     SPECTRUM'S conduct, as described above, was extreme and outrageous. SPECTRUM risked the safety and well-being of consumers and users of its PRESSURE

COOKERS, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. SPECTRUM made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.

51.     SPECTRUM'S breach of its express warranties was the direct and proximate cause of Plaintiff's injuries and damages.

**COUNTY THREE**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Against Defendant QVC)**

52.     Plaintiff incorporates as if re-alleged Paragraphs 1 through 52.

53.     Defendant QVC marketed, distributed, and sold its PRESSURE COOKER to Plaintiff's mother in South Carolina.

54.     When QVC sold the PRESSURE COOKER to Plaintiff's mother, its sale included an implied warranty that the cooker was merchantable and fit for the ordinary purpose for which it was intended.

55.     Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

56.     QVC'S PRESSURE COOKER was not merchantable and fit for its ordinary purpose, because it had the propensity to lead to serious personal injuries as described herein.

57.     Plaintiff's mother purchased the PRESSURE COOKER, and Plaintiff used the PRESSURE COOKER, with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

58.     QVC'S conduct, as described above, was extreme and outrageous. QVC risked the safety and well-being of consumers and users of its PRESSURE COOKERS, including

10

Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. QVC made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.

59.     QVC'S breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injuries and damages.

## COUNT FOUR
## BREACH OF EXPRESS WARRANTY
### (Against Defendant QVC)

60.     Plaintiff incorporates as if re-alleged Paragraphs 1 through 60.

61.     Defendant QVC marketed, distributed, and sold its PRESSURE COOKER to Plaintiff's mother in South Carolina.

62.     When QVC sold the PRESSURE COOKER, its sale included an express warranty on its labeling that it complied with applicable UL standards for pressure cookers:



63.     In fact, the PRESSURE COOKER failed to comply with these standards because Plaintiff, "[a]n ordinary user," was able to "manually defeat[] the holding action of the clamping device when the pressure in the cooker reache[d] a value that creates a risk of injury to persons.

The propelling of a loosened cover and the escape of steam or hot water are examples of this risk." UL 136 § 9.1.

64.    Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the express warranties.

65.    QVC'S PRESSURE COOKER breached its express warranties because it had the propensity to lead to serious personal injuries as described herein.

66.    Plaintiff's mother purchased the PRESSURE COOKER and Plaintiff used the PRESSURE COOKER with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

67.    QVC'S conduct, as described above, was extreme and outrageous. QVC risked the safety and well-being of consumers and users of its PRESSURE COOKERS, including Plaintiff, with the knowledge of the safety and efficacy problems and suppressed this knowledge from the public. QVC made conscious decisions not to redesign, warn or inform the unsuspecting consuming public.

68.    QVC'S breach of its express warranties was the direct and proximate cause of Plaintiff's injuries and damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A.    That proper process be issued upon Defendants and that Defendants be required to answer this Complaint within the time period allotted by law.

B.      That this Court enter an Order granting Plaintiff a judgment against Defendants for compensatory damages, together with interest and costs, in an amount to be determined at trial.

C.      That this Court enter an Order granting Plaintiff a judgment for damages, costs, attorney's fees, expert fees, pre-judgment and post-judgment interest, and such other and further relief as the Court deems just and equitable.

D.      That Plaintiff be granted a trial by jury on all issues.

E.      That this Court enter an Order granting Plaintiff pre- and post-judgment interest along with attorney fees and costs as allowed by law.

F.      For such other, further, special, extraordinary and general relief to which Plaintiff is entitled under the circumstances of this cause.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by struck jury on all issues so triable.

Respectfully submitted this  1st day of April, 2025.

[SIGNATURE PAGE TO FOLLOW]

PARKER LAW GROUP, LLP

BY:    *s/Neil E. Alger*
        Neil E. Alger, Esquire
        Fed. Bar ID #: 11903
        690 North Green Street
        Ridgeland, SC 29936
        (843) 547-8011
        nalger@parkerlawgroupsc.com

        ~AND~

        CORY WATSON, P.C.
        Adam W. Pittman, Esq.
        2131 Magnolia Ave. South
        Birmingham, Alabama 35209
        205-328-2200
        apittman@corywatson.com

April 1, 2025
Ridgeland, South Carolina        ATTORNEYS FOR PLAINTIFF